**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| BX LED LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:23-cv-00451 |
| | ) |
| LOWE'S COMPANIES, INC. and | ) **JURY TRIAL DEMANDED** |
| LOWE'S HOME CENTERS, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BX LED LLC ("BX" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendants Lowe's Companies, Inc. and Lowe's Home Centers, LLC (collectively, "Lowe's" or "Defendants"), and alleges as follows:

## SUMMARY

1.      Plaintiff is the owner by assignment of all right, title and interest in United States United States Patent Nos. 6,869,812; 7,901,109; 7,973,465; 8,203,260; 8,567,988; and 10,966,300 (collectively, the "Patents-in-Suit").

2.      Defendants infringe the Patents-in-Suit at least by selling, without authorization, Plaintiff's proprietary technologies in a number of their commercial products including, *inter alia*, Utilitech, Lithonia Lighting, Harbor Breeze, allen + roth, and Kobalt brand products, *e.g.*, allen + roth Kinsley 3-Light,  Harbor Breeze Flanagan II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, Utilitech 24inch LED Under Cabinet Light, Utilitech Bright White LED Strip

Light, Lithonia CPRB LED Light, Lithonia TWX2 Wall Pack, Lithonia LBR4 Series Recessed Downlight, Utilitech 5 or 6 in CCT Switchable Recessed Downlight, Utilitech 60W EQ Vertical LED Bulb, Utilitech BR30 Soft White Bulb, Utilitech 90W Par38 Soft White Bulb, Utilitech A19 Soft White Bulb, Utilitech BR30 Bright White Bulb, and Lithonia OVFL 1RH Floodlight, among other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

3.     By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendants' infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5.     Defendants have infringed and continue to infringe, and at least as early as the filing and/or service of this Complaint, have induced and continue to induce infringement of, and have contributed to and continue to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6.     Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks monetary damages for Defendants' infringement of the Patents-in-Suit.

## THE PARTIES

7.     Plaintiff BX LED LLC is a Texas limited liability company with its principal place

of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

8.     On information and belief, Defendant Lowe's Companies, Inc. is a North Carolina corporation with its principal place of business at 1000 Lowe's Boulevard, Mooresville, North Carolina, 28697, and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

9.     On information and belief, Defendant Lowe's Home Centers, LLC is a North Carolina limited liability company with its principal place of business at 1605 Curtis Bridge Road, North Wilkesboro, North Carolina, 28697, and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

10.     On information and belief, Defendants operate numerous regular and established places of business, referred to as "Lowe's" retail stores, throughout the Western District of Texas, including, but not limited to, a "Lowe's" retail store (Store #0129) located at 201 North New Road Waco, TX 76710. *See* https://www.lowes.com/store/TX-Waco/0129.

11.     On information and belief, Defendants produce or cause to be produced the Kobalt, allen + roth, Utilitech, and Harbor Breeze brand products under their private label business (*see, e.g.* https://www.energystar.gov/productfinder/product/certified-light-bulbs/details/2401544) the Kobalt, allen + roth, Utilitech, and Harbor Breeze brands are trademarked and held by LF, LLC (https://uspto.report/TM/88546361,                                    https://uspto.report/TM/78811452, https://uspto.report/TM/85896167, and https://uspto.report/TM/78287462). Through, at least, Defendants' sale of the Infringing Products, Defendants have committed, and continue to commit,

ongoing acts of infringement throughout this District.

12.     On information and belief, Defendants, through their numerous retail stores, directly and/or indirectly distribute, market, offer to sell, and/or sell the Accused Products in the United States and/or import the Accused Products into the United States, including in the Western District of Texas, and otherwise direct infringing activities to this District in connection with the Accused Products.

## JURISDICTION AND VENUE

13.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

14.     This Court has personal jurisdiction over Defendants because Defendants have (i) availed themselves of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as marketing, shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

15.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), as Defendants have regular and established places of business throughout this district

and state in the form of numerous retail stores that it owns and operates, including but not limited to the retail store located at 210 North New Road, Waco TX 76710.

## PATENTS-IN-SUIT

### U.S. Patent No. 6,869,812

16.     U.S. Patent No. 6,869,812 (the "'812 Patent") is titled "High power AllnGaN based multichip light emitting diode" and was issued on March 22, 2005. A true and correct copy of the '812 Patent is attached as Exhibit A.

17.     The '812 Patent was filed on May 13, 2003 as U.S. Patent Application No. 10/438,108.

18.     Plaintiff is the owner of all rights, title, and interest in and to the '812 Patent, with the full and exclusive right to bring suit to enforce the '812 Patent, including the right to recover for past infringement.

19.     The '812 Patent is valid and enforceable under United States Patent Laws.

20.     The '812 Patent recognized problems with existing light emitting diodes at the time of the invention of the '812 Patent.

21.     For instance, the inventors of the '812 Patent recognized that prior art light emitting diodes had issues of insufficient illumination and poor efficiency, limiting their ability "to function in some applications, such as providing general illumination, *e.g.*, ambient lighting." '812 Patent at 1:24-31. Prior attempts to address these issues involved the use of multiple LEDs and/or larger device sizes. *See id.* at 1:38-45, 2:16-18.

22.     The use of larger device sizes introduced other impediments towards efficiency, *e.g.*, lower light extraction efficiency relative to smaller devices. *See id.* at 2:61-65. Light extraction efficiency refers to the issue that when light is generated in an LED, some light fails to

escape the device, because "as the device size increases, light has a tendency to bounce more and thus travel a longer distance before exiting the device, resulting in increased light loss," whereas "light tends to bounce fewer times in a smaller device and thus travels a shorter distance." *See id.* at 3:12-16.

23.    The inventors of the '812 Patent recognized that it was "desirable to minimize the number of bounces and the total travel distance before light can escape for any light transmissive layer of an LED." *See id.* at 3:9-11.

24.    In view of the foregoing, among other advantages over the prior art, the inventions claimed by the '812 Patent provide the benefits of "superior light output efficiency" over the prior art by way of an active surface with elongated geometry. *See id.* at 11:46-48. With elongated geometry, "light can easily escape from the long dimension side, thus substantially enhancing the brightness of the device. The elongated configuration of the LED chip also enhances heat dissipation, thus allowing the device to be operated at higher current levels to facility further enhancement of the light output thereof, as well as for improvement of the efficiency thereof." *See id.* at 8:62-9:3.

### U.S. Patent No. 7,901,109

25.    U.S. Patent No. 7,901,109 (the "'109 Patent") is titled "Heat sink apparatus for solid state lights" and was issued on March 8, 2011. A true and correct copy of the '109 Patent is attached as Exhibit B.

26.    The '109 Patent was filed on June 30, 2008 as U.S. Patent Application No. 12/165,563.

27.    Plaintiff is the owner of all rights, title, and interest in and to the '109 Patent, with the full and exclusive right to bring suit to enforce the '109 Patent, including the right to recover

for past infringement.

28.     The '109 Patent is valid and enforceable under United States Patent Laws.

29.     The '109 Patent recognized problems with existing solid state lights at the time of invention.

30.     For instance, the '109 Patent recognized that the "operational power of many current solid state lights, such as light-emitting diode (LED) lights, is often limited by the solid state lights' ability to dissipate heat." '109 Patent at 1:11-13. "Accordingly, increasing the ability of a solid state light to dissipate heat allows for higher power, and thus brighter, more efficient solid state lights." *Id.* at 1:18-20.

31.     In view of the foregoing, the '109 Patent discloses, in one embodiment, "a heat sink apparatus for a solid state light" that "comprises a heat sink comprising a first end configured for connection to a solid state light, a second end opposite the first end, and a heat dissipating portion between the first end and the second end. The heat dissipating portion has an elongated portion and a plurality of fins for dissipating heat generated by the solid state light, the fins extending from the elongated portion." *Id.* at 1:27-34. Through this, and other disclosed embodiments, the '109 Patent offers advantages of, *inter alia*, increasing the heat dissipation, power, brightness, and efficiency of solid state lighting over the prior art.

### U.S. Patent No. 7,973,465

32.     U.S. Patent No. 7,973,465 (the "'465 Patent") is titled "Light emitting diode with thin multilayer phosphor film" and was issued on July 5, 2011. A true and correct copy of the '465 Patent is attached as Exhibit C.

33.     The '465 Patent was filed on July 15, 2010 as U.S. Patent Application No. 12/836,852.

34.    Plaintiff is the owner of all rights, title, and interest in and to the '465 Patent, with the full and exclusive right to bring suit to enforce the '465 Patent, including the right to recover for past infringement.

35.    The '465 Patent is valid and enforceable under United States Patent Laws.

36.    The inventors of the '465 Patent recognized problems with the application of phosphor material to LEDs and other solid state lighting devices at the time. Specifically, phosphor materials were used to convert blue or ultraviolet LEDs to white light; to that end, the prior art encapsulated blue and ultraviolet LEDs with phosphor "by introducing a suspension of phosphor particles into a carrier (e.g., silicone), encapsulating the LEDs in the carrier, and curing the carrier to provide a solid layer of material in which the phosphor particles will remain suspended." '465 Patent at 1:37-41.

37.    One problem present in the prior art was that "silicone is a poor thermal conductor, and when illuminated, phosphors generate heat. Thus, when a phosphor-coated LED with a cured silicone carrier is used in a high-power application, the cured silicone may crack and/or have a reduced lifetime. This property limits their use in high power LED applications which use temperature sensitive phosphor. Further, cracks in the phosphor and silicone composition reduce the efficiency of the device." *Id.* at 1:41-45.

38.    The inventions claimed by the '465 Patent addressed these limitations by, e.g., separating the phosphor bearing film from the cured silicone film, such that the cured silicone film was substantially free of phosphor. As a result, the '465 Patent offered advantages of, *inter alia*, simplifying the process for applying phosphor material to LEDs, as well as increasing the reliability and efficiency of phosphor material encapsulated LEDs.

## U.S. Patent No. 8,203,260

39.    U.S. Patent No. 8,203,260 (the "'260 Patent") is titled "Color temperature tunable white light source" and was issued on March 14, 2006. A true and correct copy of the '260 Patent is attached as Exhibit D. The '260 Patent was filed on April 13, 2007 as U.S. Patent Application No. 11/787,107.

40.    Plaintiff is the owner of all rights, title, and interest in and to the '260 Patent, with the full and exclusive right to bring suit to enforce the '260 Patent, including the right to recover for past infringement.

41.    The '260 Patent is valid and enforceable under United States Patent Laws. The '260 Patent recognized problems with existing light emitting devices at the time of the invention of the '260 Patent.

42.    For instance, the '260 Patent describes apparatuses, absent in the prior art, which provide a tunable white light source. *See*, *e.g.*, '260 Patent at 2:15-17. The '260 Patent recognized that traditional white light sources emitted white light at a relatively fixed color temperature, such as "warm white light" having a color temperature of approximately 3000 Kelvin (K), in the case of incandescent lighting, and "cold white light" having a color temperature of approximately 7000K, in the case of fluorescent lighting. *See id*. at 1:20-24. At the time of the '260 Patent, white LED lighting was a relatively recent innovation and had similar limitations to traditional white light sources. *Id*. at 1:13:29.

43.    The '260 Patent recognizes that the prior art comprised systems and methods wherein LED white light was generated within a predetermined portion of the visible spectrum, for example, 400nm-700nm wavelength range, and using a significant number (e.g., "three hundred LEDs each of which has a narrow spectral width," in one example) of LEDs to achieve

any tunability within that spectrum. *See id*. at 1:55-65. Considering the narrow visibility spectrum of white light produced by these sources, the unwieldy number of LEDs required to provide tunability, and/or the need for cumbersome filters to obtain tunability, there was a need in the prior art for methods and devices that provided sources of white light that were tunable across the color temperature and visible spectrum with a minimal number of LED arrays. In addition, there was particular need to further increase the operating life and lower the power consumption of lighting devices, including LED lighting. *See*, *e.g.*, *id*. at 1:46-49; 2:61-64.

44.     The inventions claimed by '260 Patent address these limitations by describing an apparatus with two LED arrangements wherein the first LED arrangement emits light of a first wavelength range, and the second emits light of a second wavelength range such the combination of the two appears white. *See*, *e.g.*, *id*. at 2:21-28. The first and second LED arrangements also contained respective means for controlling their relative outputs. *See*, *e.g.*, *id*. For example, in one described embodiment, the color temperature of the two LEDs could be tuned by controlling the relative magnitude of the drive currents of the LEDs using, for example, a potential divider arrangement. *See id*. at 2:50-52.

45.     The inventors of the '260 Patent recognized a number of advantages of the claimed inventions over the prior art, including wide application in a variety of commercial and domestic lighting applications, without the necessity to manufacture different lights of various static, or highly limited, color temperatures and visibility spectrum output for different applications. *See*, *e.g.*, *id*. at 8:51-53. The invention is also particularly advantageous in applications where visibility may be impaired with changing environmental conditions such as fog, dust, or smoke, such that the LED lighting can be tuned to the level of optimal visibility. *See*, *e.g.*, *id*. at 3:49-53; 8:53-56. The invention further has the advantage of minimizing the number of LED arrangements necessary

to achieve tunability across a broad color temperature spectrum, thus improving efficiency in power consumption and reducing manufacturing cost. *See*, *e.g.*, *id*. at 2:61-65.

**U.S. Patent No. 8,567,988**

46.    U.S. Patent No. 8,567,988 (the "'988 Patent") is titled "Efficient LED array" and was issued on October 29, 2013. A true and correct copy of the '988 Patent is attached as Exhibit E.

47.    The '988 Patent was filed on September 29, 2008 as U.S. Patent Application No. 12/240,011.

48.    Plaintiff is the owner of all rights, title, and interest in and to the '988 Patent, with the full and exclusive right to bring suit to enforce the '988 Patent, including the right to recover for past infringement.

49.    The '988 Patent is valid and enforceable under United States Patent Laws. The '988 Patent recognized problems with existing light emitting device arrays at the time of its invention.

50.    The inventors of the '988 Patent recognized that traditional prior art LED arrays were complicated to manufacture and resulted in inefficient heat dissipation, which in turn lowered light output by the LED array. In this regard, the '988 Patent recognized that "directly mounting the LED chips to a metal substrate without an insulting dielectric provided an efficient thermal path to reduce or minimize the degrading effects of heat on light output." *See*, *e.g.*, '988 Patent at 4:54-59. The '988 Patent also recognized that by spacing the LED chips apart from each other and making the surface of the metal substrate reflective, the regions between the chips operate to reflect light thereby increasing the optical output of the LED array. *See*, *e.g.*, *id*. at 6:10-17. Thus, the invention described and claimed in the '988 Patent provides the advantages of, *inter alia*, increased thermal efficiency and increased light output over the prior art.

11

**U.S. Patent No. 10,966,300**

51.    U.S. Patent No. 10,966,300 (the "'300 Patent") is titled "Light sources utilizing segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 30, 2021. A true and correct copy of the '300 Patent is attached as Exhibit F.

52.    The '300 Patent was filed on June 21, 2019 as U.S. Patent Application Serial No. 16/449,220 and has a priority date of February 26, 2009.

53.    Plaintiff is the owner of all rights, title, and interest in and to the '300 Patent, with the full and exclusive right to bring suit to enforce the '300 Patent, including the right to recover for past infringement.

54.    The '300 Patent is valid and enforceable under United States Patent Laws.

55.    The '300 Patent recognized and provided solutions to problems arising with LEDs' replacement of conventional light emitting devices such as incandescent and fluorescent lights. '300 Patent at 1:26-32.

56.    For instance, the '300 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The '300 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. Id. at 1:41-61. A light source with a typical single LED does not produce sufficient light for most applications and, in general, "there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency." Id. at 1:62-2:8. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates associated with

connecting the LEDs in a series-type connection or by making larger LEDs. Id. at 2:9-3:31.

57.     The inventors of the '300 Patent addressed these limitations by utilizing "a single LED die that is divided into N segments that are serially connected to one another." Id. at 4:29-42. In this respect, the '300 Patent comprises, in one embodiment, a plurality of segmented LEDs connected in parallel between two power rails where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. Id. at 4:29-45; 10:64-11:5; abstract.

58.     In view of the foregoing limitations of the prior art, the inventions claimed in the '300 Patent provide improved overall efficiency and life of the light source and "the ability to provide a light source that operates from a significantly higher potential than conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources." See, e.g., id. at 7:37-43.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,869,812

59.     Plaintiff incorporates by reference and re-alleges paragraphs 1-58 of the Complaint as if fully set forth herein.

60.     Defendants have infringed and is infringing, either literally or under the doctrine of equivalents, the '812 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the allen + roth Kinsley 3-Light,  Harbor Breeze Flanagan II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, Utilitech 24inch LED Under Cabinet Light, Utilitech Bright White LED Strip Light, Lithonia CPRB LED Light, Lithonia TWX2 Wall Pack, Utilitech BR30 Soft White Bulb,

Utilitech 90W Par38 Soft White Bulb, Utilitech A19 Soft White Bulb, Utilitech BR30 Bright White Bulb, and Lithonia OVFL 1RH Floodlight, and  among other substantially similar products (collectively, the "'812 Accused Products").

61.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '812 Patent by the '812 Accused Products. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '812 Accused Products that it obtains during discovery.

62.     **1(a): A light emitting diode chip comprising**:— The Harbor Breeze Flanagan II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, and Utilitech Bright White LED Strip Light each comprise a "light emitting diode chip," as recited in claim 1:

*Harbor Breeze Flanagan II*

      

Product Box                    LED Package                    LED Chip

*Kobalt Portable Work Light*

      

Product Box                    LED Package                    LED Chip

*Lithonia ESX LED Area Work Light*

  

Product Box                     LED Package                     LED Chip

*Utilitech Bright White LED Strip Light*

  

Product Box                     LED Package                     LED Chip

63.    ***1(b): a substantially transparent substrate;***— The Harbor Breeze Flanagan II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, and Utilitech Bright White LED Strip Light each comprise a "substantially transparent substrate," as seen in the below images where the transparent substrate is annotated in red:



*Harbor Breeze Flanagan II*



*Kobalt Portable Work Light*



*Lithonia ESX LED Area Work Light*



*Utilitech Bright White LED Strip Light*

**1(c): *An active region formed upon the substrate; and;*—** The Harbor Breeze Flanagan

II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, and Utilitech Bright White

LED Strip Light each comprise an "active region formed upon the substrate," as seen in the below images:



*Harbor Breeze Flanagan II*



*Kobalt Portable Work Light*



*Lithonia ESX LED Area Work Light*



*Utilitech Bright White LED Strip Light*

***1(d): Wherein an aspect ratio of the active area is greater than approximately 1.5 to 1.***—
The Harbor Breeze Flanagan II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, and Utilitech Bright White LED Strip Light each comprise an active region wherein the aspect ratio is greater than approximately 1.5 to 1.

*Harbor Breeze Flanagan II*



*Kobalt Portable Work Light*



*Lithonia ESX LED Area Work Light*



*Utilitech Bright White LED Strip Light*



The aspect ratios of the active region of the light emitting diode chip in the Harbor Breeze Flanagan II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, and Utilitech Bright White LED Strip Light are all greater than 1.5 to 1. Specifically, the aspect ratios, as derived from the pixel (px) measurements taken from above images, are:

|  | L1 (long side) | L2 | Aspect Ratio (L1/L2) |
|---|---|---|---|
| Harbor Breeze Flanagan II | 2390.01 | 1125.04 | 2.124 |
| Kobalt Portable Work Light | 3570.13 | 1575.01 | 2.267 |
| Lithonia ESX LED Area Work Light | 4020.38 | 2245.20 | 1.790 |
| Utilitech Bright White LED Strip Light | 2789.27 | 1008.07 | 2.767 |

64.     Additionally, Defendants have been and/or currently are are active inducers of infringement of the '812 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '812 Patent under 35 U.S.C. § 271(c).

65.     Indeed, Defendants have been and/or currently are intentionally causing, urging,

and/or encouraging customers to directly infringe one or more claims of the '812 Patent while being on notice of (or willfully blind to) the '812 Patent. For instance, Defendants have supplied and continue to supply the '812 Accused Products to customers (e.g., end users and/or distributors of the '812 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '812 Patent.

66.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '812 Patent. As one example, Defendants promote, advertise and instruct customers or potential customers about the '812 Accused Products and uses of the '812 Accused Products. *See*, *e.g.*, https://www.lowes.com/pd/Harbor-Breeze-Flanagan-52-in-Matte-Black-Ceiling-Fan-with-Remote-5-Blade/5003466495;    https://www.lowes.com/pd/Kobalt-Kobalt-7000-Lumen-Work-Light/5002106619;    https://www.lowes.com/pd/Lithonia-Lighting-Outdoor-ESX1-LED-P2-4000K-Type-3-Optic-MVOLT-Universal-Pole-Mounting-Bi-Level-Area-Light-in-Bronze/5001749447;                        https://www.lowes.com/pd/Utilitech-2L2F-LED-STRIPLIGHT/1002624038.

67.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '812 Patent. For instance, Defendants know (and/or have known) of the existence of the '812 Patent or at least should have known of the existence of the '812 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '812 Patent since at least as early as June 13, 2022, when Defendants received Plaintiff's Notice Letter. And, as a result of their knowledge of the '812 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does

(and/or would) result in direct infringement of the '812 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '812 Patent and/or subjectively believes (and/or has believed) that their actions will (and/or would) result in infringement of the '812 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

68.     Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '812 Patent by offering for sale, selling, and/or importing one or more components in connection with the '812 Accused Products that contribute to the direct infringement of the '812 Patent by customers of the '812 Accused Products. As set forth above, Defendants have had actual knowledge of the '812 Patent or is willfully blind to its existence since at least as early as June 13, 2022. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '812 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '812 Patent. Defendants have supplied (and/or continue to supply) the '812 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '812 Patent by using the '812 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

69.     At least as early as June 13, 2022, Defendants' infringement of the '812 Patent was and continue to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

70.     Additional allegations regarding Defendants' knowledge of the '812 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for

discovery.

71.    Defendants' infringement of the '812 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '812 Patent.

73.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '812 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,901,109

74.    Plaintiff incorporates by reference and re-alleges paragraphs 1-73 of the Complaint as if fully set forth herein.

75.    Defendants have infringed and is infringing, either literally or under the doctrine of equivalents, the '109 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, Lithonia LBR4 Series Recessed Downlight, and Lithonia TWX2 Wall Pack among other substantially similar products (collectively, the "'109 Accused Products").

76.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 10 of the '109 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '109 Accused Products that it obtains during discovery.

77. **10(a): *A solid state light*** assembly**, *comprising:*—**The Lithonia LBR4 Series Recessed Downlight and Kobalt Portable Work Light are solid state light assemblies.




*Lithonia LBR4 Series Recessed Downlight*          *Kobalt Portable Work Light*

**10(b): *a solid state light; and*—** The Lithonia LBR4 Series Recessed Downlight and Kobalt Portable Work Light comprise solid state lights.



*Lithonia LBR4 Series Recessed Downlight*



*Kobalt Portable Work Light*

78.    *10(c): a heat sink integrally affixed to the solid state light, the heat sink comprising at least one fin for dissipating heat generated by the solid state light.*

The Lithonia LBR4 Series Recessed Downlight have a heat sink integrally affixed to the solid state light:



This heat sink comprises a plurality of fins for dissipating heat generated by the solid state light:



The Kobalt Portable Work Light has a heat sink integrally affixed to the solid state light:



This heat sink comprises a plurality of fins for dissipating heat generated by the solid state light:



79.    Additionally, Defendants have been and/or currently are active inducers of infringement of the '109 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '109

Patent under 35 U.S.C. § 271(c).

80. Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '109 Patent while being on notice of (or willfully blind to) the '109 Patent. For instance, Defendants have supplied and continue to supply the '109 Accused Products to customers (e.g., end users and/or distributors of the '109 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '109 Patent.

81. Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '109 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '109 Accused Products and uses of the '109 Accused Products. *See*, *e.g.*, https://www.lowes.com/pd/Kobalt-Kobalt-7000-Lumen-Work-Light/5002106619; https://www.lowes.com/pd/Lithonia-Lighting-LBR4-Round-Series/5005841803.

82. Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '109 Patent. For instance, Defendants know (and/or have known) of the existence of the '109 Patent or at least should have known of the existence of the '109 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '109 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '109 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '109 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct

infringement of one or more claims of the '109 Patent and/or subjectively believes (and/or has believed) that their actions will (and/or would) result in infringement of the '109 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

83.    Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '109 Patent by offering for sale, selling, and/or importing one or more components in connection with the '109 Accused Products that contribute to the direct infringement of the '109 Patent by customers of the '109 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '109 Patent or is willfully blind to its existence since at least as early as June 13, 2022. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '109 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '109 Patent. Defendants have supplied (and/or continue to supply) the '109 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '109 Patent by using the '109 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

84.    On information and belief, at least as early as June 13, 2022, Defendants' infringement of the '109 Patent was and continue to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

85.    Additional allegations regarding Defendants' knowledge of the '109 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

86.    Defendants' infringement of the '109 Patent is exceptional and entitles Plaintiff to

attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

87.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '109 Patent.

88.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '109 Patent, including, without limitation, a reasonable royalty.

<u>**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,973,465**</u>

89.    Plaintiff incorporates by reference and re-alleges 1-88 of the Complaint as if fully set forth herein.

90.    Defendants have infringed and is infringing, either literally or under the doctrine of equivalents, the '465 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the allen + roth Kinsley 3-Light,  Harbor Breeze Flanagan II, Utilitech Bright White LED Strip Light, Lithonia TWX2 Wall Pack, Lithonia LBR4 Series Recessed Downlight, Utilitech 90W Par38 Soft White Bulb, and Lithonia OVFL 1RH Floodlight, among other substantially similar products (collectively, the "'465 Accused Products").

91.    As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '465 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '465 Accused Products that it obtains during discovery.

92.    ***1(a): An apparatus comprising: A light emitting device;***—The allen + roth Kinsley

28

3-Light, and Lithonia TWX2 Wall Pack are apparatuses containing LEDs.

 

*allen + roth Kinsley 3-Light*                    *Lithonia TWX2 Wall Pack*

93.      **1(b): a phosphor bearing film arranged with the light emitting device, the phosphor bearing film comprising phosphor and a silicone carrier; and**—The below images of an individual LED from the above '465 Accused Products are annotated to illustrate the phosphor bearing film comprising phosphor and a silicone carrier:



*allen + roth Kinsley 3-Light*



*allen + roth Kinsley 3-Light*



*Lithonia TWX2 Wall Pack*



*Lithonia TWX2 Wall Pack*

94.    ***1(c): a cured silicone film on the phosphor bearing film, the cured silicone film being substantially free of phosphor.***—The below images of an individual LED from the above '465 Accused Products are annotated to illustrate the cured silicone film on top of the phosphor film, the cured silicone film being substantially free of the phosphor.



*allen + roth Kinsley 3-Light*



*Lithonia TWX2 Wall Pack*

95.    Additionally, Defendants have been and/or currently are active inducers of infringement of the '465 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '465 Patent under 35 U.S.C. § 271(c).

96.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '465 Patent while being on notice of (or willfully blind to) the '465 Patent. For instance, Defendants have supplied and continue to supply the '465 Accused Products to customers (e.g., end users and/or distributors of the '465 Accused Products) while knowing that use of these products in their intended manner

will directly infringe one or more claims of the '465 Patent.

97.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '465 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '465 Accused Products and uses of the '465 Accused Products. *See*, *e.g.*, https://www.lowes.com/pd/Lithonia-Lighting-Outdoor-TWX2-LED-Adjustable-Light-Output-5000K-MVOLT-Glass-Wall-Pack-in-Textured-Bronze/5001838075; https://www.lowes.com/pd/allen-roth-Kinsley-3-Light-Nickel-Modern-Contemporary-Vanity-Light/1001065498.

98.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '465 Patent. For instance, Defendants know (and/or have known) of the existence of the '465 Patent or at least should have known of the existence of the '465 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '465 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '465 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '465 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '465 Patent and/or subjectively believes (and/or has believed) that their actions will (and/or would) result in infringement of the '465 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

99.    Additionally, Defendants have been and/or currently are contributorily infringing

one or more claims of the '465 Patent by offering for sale, selling, and/or importing one or more components in connection with the '465 Accused Products that contribute to the direct infringement of the '465 Patent by customers of the '465 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '465 Patent or is willfully blind to its existence since at least as early as June 13, 2022. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '465 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '465 Patent. Defendants have supplied (and/or continue to supply) the '465 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '465 Patent by using the '465 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

100.    On information and belief, at least as early as June 13, 2022, Defendants' infringement of the '465 Patent was and continue to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

101.    Additional allegations regarding Defendants' knowledge of the '465 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

102.    Defendants' infringement of the '465 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

103.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '465 Patent.

104.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has

sustained as a result of Defendants' infringement of the '465 Patent, including, without limitation, a reasonable royalty.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,203,260

105.    Plaintiff incorporates by reference and re-alleges 1-104 of the Complaint as if fully set forth herein.

106.    Defendants have infringed and is infringing, either literally or under the doctrine of equivalents, the '260 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Utilitech 5 or 6 in CCT Switchable Recessed Downlight, among other substantially similar products (collectively, the "'260 Accused Products").

107.    As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '260 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '260 Accused Products that it obtains during discovery.

108.    *1(a): A color temperature tunable white light source, the source comprising:*— The '260 Accused Products are color temperature tunable white light sources, as seen below:

 

109.    ***1(b): an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K and;***—The white light sources of the '260 Accused Products comprise an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K.



 

*Utilitech 5 or 6 in CCT Switchable Recessed Downlight*

***1(c): second LED arrangements operable to emit white light with a color correlated***

*temperature (CCT) in a range of 6000 K to 10,000 K*

 

*Utilitech 5 or 6 in CCT Switchable Recessed Downlight*

110.    ***1(d): wherein the LED arrangements are configured such that a composite light is emitted by the array;—*** The LED arrangements of the '260 Accused Products are configured to emit a composite light. For example, as seen in the images for limitation 1(a), the LED arrangements are tunable and placed next to each other so that the Warm White LED arrangement and the Cool White LED arrangement emit a composite light (e.g. a uniform white color temperature).

111.    ***1(e): wherein the relative drive currents of the first and second LED arrangements are controllable, and thus variable in relative magnitude, such that the color correlated temperature of the composite light emitted by the array is electrically tunable***—As seen from the above juxtapositions of the LED arrangements and mobile application screenshots in limitations 1(b) and 1(c), the color correlated temperature of the composite light emitted by the array is electrically tunable and such tuning is accomplished by way of controlling the relative drive currents and thus relative magnitudes of the first and second LED arrangements.

112.    Additionally, Defendants have been and/or currently are active inducers of infringement of the '260 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '260 Patent under 35 U.S.C. § 271(c).

113.    Indeed, Defendants have been and/or currently are intentionally causing, urging,

and/or encouraging customers to directly infringe one or more claims of the '260 Patent while being on notice of (or willfully blind to) the '260 Patent. For instance, Defendants have supplied and continue to supply the '260 Accused Products to customers (e.g., end users and/or distributors of the '260 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '260 Patent.

114.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '260 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '260 Accused Products and uses of the '260 Accused Products. *See, e.g.*, https://www.lowes.com/pd/Utilitech-UT-5-or-6-IN-CCT-3-1-UNIV-Dl-White-5-in-or-6-in-800-Lumen-Cool-White-Round-Dimmable-Recessed-Downlight/5013469763.

115.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '260 Patent. For instance, Defendants know (and/or have known) of the existence of the '260 Patent or at least should have known of the existence of the '260 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '260 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '260 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '260 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '260 Patent and/or subjectively believes (and/or has believed) that their actions will (and/or would) result in infringement of the '260 Patent but has

taken (and/or took) deliberate actions to avoid learning of those facts.

116.    Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '260 Patent by offering for sale, selling, and/or importing one or more components in connection with the '260 Accused Products that contribute to the direct infringement of the '260 Patent by customers of the '260 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '260 Patent or is willfully blind to its existence since at least as early as June 13, 2022. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '260 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '260 Patent. Defendants have supplied (and/or continue to supply) the '260 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '260 Patent by using the '260 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

117.    On information and belief, at least as early as June 13, 2022, Defendants' infringement of the '260 Patent was and continue to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

118.    Additional allegations regarding Defendants' knowledge of the '260 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

119.    Defendants' infringement of the '260 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

120.    Plaintiff is in compliance with any applicable marking and/or notice provisions of

35 U.S.C. § 287 with respect to the '260 Patent.

121.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '260 Patent, including, without limitation, a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,567,988

122.    Plaintiff incorporates by reference and re-alleges paragraphs 1-121 of the Complaint as if fully set forth herein.

123.    Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '988 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the allen + roth Kinsley 3-Light,  Harbor Breeze Flanagan II, Kobalt Portable Work Light, Lithonia ESX LED Area Work Light, Lithonia TWX2 Wall Pack, Lithonia LBR4 Series Recessed Downlight, Utilitech BR30 Soft White Bulb, Utilitech 90W Par38 Soft White Bulb, Utilitech A19 Soft White Bulb, Utilitech BR30 Bright White Bulb, and Lithonia OVFL 1RH Floodlight among other substantially similar products (collectively, the "'988 Accused Products").

124.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 and 7 of the '988 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '988 Accused Products that it obtains during discovery.

125.    *1(a): A light emitting diode (LED) apparatus comprising:*—The Harbor Breeze Flanagan II, and Lithonia TWX2 Wall Pack each comprises an LED apparatus:



*Harbor Breeze Flanagan II*



*Lithonia TWX2 Wall Pack*

126.    ***1(b): a metal substrate having a reflective surface; and:***—The LED apparatuses

of the Harbor Breeze Flanagan II, and Lithonia TWX2 Wall Pack each comprises a metal substrate

having a reflective surface, as seen in the annotated images below:





*Harbor Breeze Flanagan II*





*Lithonia TWX2 Wall Pack*

127.    ***1(c): a plurality of LED chips mounted directly to the reflective surface of the*** ***metal substrate creating an efficient thermal path and***;—The LED apparatuses of the Harbor Breeze Flanagan II, and Lithonia TWX2 Wall Pack each comprises a plurality of LED chips

mounted directly to the reflective surface of the metal substrate creating an efficient thermal path, as seen in the annotated images below.





*Harbor Breeze Flanagan II*





*Lithonia TWX2 Wall Pack*

128.     *1(d): at least a portion of the LED chips being spaced apart from each other to expose regions of the reflective surface between the portion of the LED chips, the exposed regions reflecting light emitted from the portion of the LED chips, and*—The LED chips in the Harbor Breeze Flanagan II, and Lithonia TWX2 Wall Pack are spaced apart from each other to expose regions of the reflective surface between the portion of the LED chips, the exposed regions reflecting light emitted from the portion of the LED chips, as seen in the images below.



*Harbor Breeze Flanagan II*



*Lithonia TWX2 Wall Pack*

129.  *1(e): an electrical path formed by connecting the LED chips in a chip to chip fashion*—An electrical path is formed by connecting the LED chips in a chip to chip fashion.



*Harbor Breeze Flanagan II*



*Lithonia TWX2 Wall Pack*

130.  *Claim 7: The apparatus of claim 1 wherein the plurality of LED chips have a first surface that is mounted to the reflective surface, and electrical contacts that are provided on one or more surfaces that are not the first surface*.—The LED chips have electrical contacts which are provided on surfaces other than the one mounted to the reflective surface, as seen in the below

images:



*Harbor Breeze Flanagan II*



*Lithonia TWX2 Wall Pack*

131.    Additionally, Defendants have been and/or currently are active inducers of infringement of the '988 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '988 Patent under 35 U.S.C. § 271(c).

132.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '988 Patent while being on notice of (or willfully blind to) the '988 Patent. For instance, Defendants have supplied and continue to supply the '988 Accused Products to customers (e.g., end users and/or distributors of the '988 Accused Products) while knowing that use of these products in their intended manner

will directly infringe one or more claims of the '988 Patent.

133.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '988 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '988 Accused Products and uses of the '988 Accused Products. *See, e.g.*, https://www.lowes.com/pd/Harbor-Breeze-Flanagan-52-in-Matte-Black-Ceiling-Fan-with-Remote-5-Blade/5003466495; https://www.lowes.com/pd/Lithonia-Lighting-Outdoor-TWX2-LED-Adjustable-Light-Output-5000K-MVOLT-Glass-Wall-Pack-in-Textured-Bronze/5001838075.

134.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '988 Patent. For instance, Defendants know (and/or have known) of the existence of the '988 Patent or at least should have known of the existence of the '988 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '988 Patent since at least as early as June 13, 2022. And, as a result of their knowledge of the '988 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '988 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '988 Patent and/or subjectively believes (and/or has believed) that their actions will (and/or would) result in infringement of the '988 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

135.    Additionally, Defendants have been and/or currently are contributorily infringing

one or more claims of the '988 Patent by offering for sale, selling, and/or importing one or more components in connection with the '988 Accused Products that contribute to the direct infringement of the '988 Patent by customers of the '988 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '988 Patent or is willfully blind to its existence since at least as early as June 13, 2022. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '988 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '988 Patent. Defendants have supplied (and/or continue to supply) the '988 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '988 Patent by using the '988 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

136.    At least as early as June 13, 2022, Defendants' infringement of the '988 Patent was and continue to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

137.    Additional allegations regarding Defendants' knowledge of the '988 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

138.    Defendants' infringement of the '988 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

139.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '988 Patent.

140.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '988 Patent, including, without limitation,

a reasonable royalty.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 10,966,300**

141.    Plaintiff incorporates by reference and re-alleges paragraphs 1-140 of the Complaint as if fully set forth herein.

142.    Defendants have infringed and is infringing, either literally or under the doctrine of equivalents, the '300 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Utilitech 60W EQ Vertical LED Bulb, among other substantially similar products (collectively, the "'300 Accused Products").

143.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 of the '300 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '300 Accused Products that it obtains during discovery.

144.    *1(a): A light source comprising:*—The Utilitech 60W EQ Vertical LED Bulb comprises a light source.

145.    *1(b): a substrate having first and second power rails; and*—The Utilitech 60W EQ Vertical LED Bulb comprises a substrate having first and second power rails, as seen in the annotated images below:

48

146.  ***1(c): a plurality of segmented LEDs connected between the first and second***

***power rails***—The Utilitech 60W EQ Vertical LED Bulb comprises a plurality of segmented LEDs

connected between the first and second power rails as seen in the annotated images below:







147.    *1(d): wherein each segmented LED is configured to generate light when a power signal is applied to the first and second power rails*—In the Utilitech 60W EQ Vertical LED Bulb, each segmented LED is configured to generate light when a power signal is applied to the first and second power rails.

148.    *1(e): wherein the plurality of segmented LEDs are provided by a single LED die that is divided into N segments serially connected to each other, with N being ≥1, and*—The plurality of segmented LEDs are provided by a single LED die that is divided into 3 segments serially connected to each other.







149.    ***1(f): wherein each segmented LED comprises a size that is 1/N times a size of a single junction LED fabricated in a same material as the segmented LED.***—Each segmented LED is 1/3 the size of a single junction LED fabricated in the same material as the segmented LED.

150.    Additionally, Defendants have been and/or currently are active inducers of infringement of the '300 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '300 Patent under 35 U.S.C. § 271(c).

151.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '300 Patent while being on notice of (or willfully blind to) the '300 Patent. For instance, Defendants have supplied and continue to supply the '300 Accused Products to customers (e.g., end users and/or distributors of the '300 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '300 Patent.

152.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '300 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '300 Accused Products and uses of the '300 Accused Products. *See*, *e.g.*, https://www.lowes.com/pd/Utilitech-60-Watt-EQ-4-72-in-Vertical-Cool-White-Colored-Light-Bulb/5000762957.

153.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '300 Patent. For instance, Defendants know (and/or have known) of the existence of the '300 Patent or at least should have known of the existence of the '300 Patent but was willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '300 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '300 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '300 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '300 Patent and/or subjectively believes (and/or has

believed) that their actions will (and/or would) result in infringement of the '300 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

154.    Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '300 Patent by offering for sale, selling, and/or importing one or more components in connection with the '300 Accused Products that contribute to the direct infringement of the '300 Patent by customers of the '300 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '300 Patent or is willfully blind to its existence since at least as early as June 13, 2022. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '300 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '300 Patent. Defendants have supplied (and/or continue to supply) the '300 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '300 Patent by using the '300 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendants).

155.    On information and belief, at least as early as June 13, 2022, Defendants' infringement of the '300 Patent was and continue to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

156.    Additional allegations regarding Defendants' knowledge of the '300 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

157.    Defendants' infringement of the '300 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

158.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '300 Patent.

159.    Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '300 Patent, including, without limitation, a reasonable royalty.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A.    That Judgment be entered that Defendants have infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.    An award of damages sufficient to compensate Plaintiff for Defendants' infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendants' willful infringement;

C.    That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D.    Costs and expenses in this action;

E.    An award of prejudgment and post-judgment interest; and

F.    Such other and further relief as the Court may deem just and proper.

Date: June 13, 2023                         Respectfully submitted,

                                            **PLATT CHEEMA RICHMOND PLLC**

                                            */s/ Matthew C. Acosta*
                                            Matthew C. Acosta
                                            Texas Bar No. 24062577
                                            macosta@pcrfirm.com
                                            Andrew Lin
                                            Texas Bar. No. 24092702
                                            alin@pcrfirm.com
                                            Nicholas C. Kliewer
                                            Texas Bar No. 24083315
                                            nkliewer@pcrfirm.com
                                            1201 N. Riverfront Blvd., Suite 150
                                            Dallas, Texas 75207
                                            214.559.2700 Main
                                            214.559.4390 Fax

                                            **COUNSEL FOR PLAINTIFF**
                                            **BX LED LLC**